**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:17-cv-00585-RBJ

SWIFT DISTRIBUTION LLC D/B/A ULTIMATE SUPPORT,
a Delaware limited liability company,

    Plaintiff,

v.

PRO STAGE GEAR, LLC,
a Tennessee limited liability company,

    Defendant.

_____

**PLAINTIFF SWIFT DISTRIBUTION LLC'S REPLY
BRIEF REGARDING CLAIM CONSTRUCTION**
_____

    In its Response to Swift Distribution LLC's Opening Brief, Pro Stage Gear LLC ("PSG") attempts to avoid the consequences of its narrowing reexamination amendments to the Asserted Claims, and seeks overly-broad and ambiguous "ordinary meaning" constructions for the limitations at issue. The Court should decline to adopt these "ordinary meaning" constructions for a number of reasons.

    First, "ordinary meaning" cannot apply where PSG narrowed the Asserted Claims during reexamination to avoid prior art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). Indeed, PSG does not even dispute that reexamination of the '023 Patent was initiated based upon the Examiner's conclusion that the pallet design of Sadr anticipated all original claims, and that PSG was forced to amend the claims to overcome that prior art. [*See* ECF 47, Opening Brief, pp. 3-4; ECF 44-2, pp. 412-13.] The Examiner never withdrew this conclusion and, therefore, PSG was required to amend the claims to overcome Sadr and other prior art.

1

PSG also omits important facts regarding the February 17, 2016 Examiner interview and PSG's amendments in response.[1] Following that interview, the Examiner issued a summary confirming that all prior art of record (including Sadr) had been discussed and suggesting that the following limitations be added to the pending claims to overcome the prior art:

> (a) With respect to claims 14-21 and 26-30, define the "effect support board" as having top and bottom surfaces, with an opening passing between these top and bottom surfaces.
>
> (b) With respect to claims 1-8 and 12-13, include the same language as in section (a) above. Additionally define the L-shaped leg between the top and bottom surfaces of the "effect support board".

[ECF No. 44-4, pp. 607-08.] PSG then acknowledged the Examiner's concern regarding prior art pallet designs such as Sadr [*Id*., p. 620], stating:

> To avoid the possibility of a rejection based upon non-analogous art pallet structures, PSG notes that independent claims 12 and 13 already include leg extension elements. Claims 1-3 have been amended not to include L-shaped or leg extension differentiating elements, but to include either on inclined surface or a part of a hook and loop fastening system. It is not believed that these features would be found in non-analogous pallet-type structures.

[*Id*., p. 622.] Importantly, PSG then amended the claims to add the Examiner's suggested "(a)" limitations [*Id*., pp. 610-619.] In addition, to ensure that its amendments would overcome the prior art pallet-type structures PSG went a step further and modified the bottom side limitations with the term "opposite." [*See Id*.] In view of the Examiner's express concerns in the interview summary, PSG was clearly define the L-shaped leg element structure using alternative language – otherwise, there was no reason to include "opposite." Thus, that language must be construed accordingly as proposed by Swift.

---

[1] PSG also cites to its submission of alleged evidence of secondary indicia of non-obviousness as though it were relevant. However, PSG fails to inform the Court that the Examiner rejected all of that alleged evidence. [*See* ECF 44-4, pp. 0596-98.]

Moreover, because these added limitations were added to avoid prior art, they cannot now have no meaning as PSG asserts. *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013) (when patentee disavows claim scope through amendment, the doctrine of prosecution history disclaimer narrows meaning of claim consistent with scope of disavowal). And Swift is "entitled to rely on [PSG's] representations when determining a course of lawful conduct, such as launching a new product or designing-around a patented invention." *Id*.

Second, if the Court adopts PSG's "everything has an ordinary meaning," at least Asserted Claims 1, 2, 3 and 7 will remain anticipated by Sadr.[2] (*See generally* Swift's First Supplemental Initial Invalidity Contentions, attached as Exhibit D.) PSG's "ordinary meaning" approach simply cannot be correct as it would render these claims invalid. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911 (Fed. Cir. 2004) (claims must be construed to preserve validity if possible).

Third, an ordinary meaning must be consistent with the context of the patent. *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.") At least Asserted Claims 7, 8, 17, 20 and 21 require the "hook and loop fastening system" or "friction increasing element" to be "fixably" positioned. PSG asserts that the hook and loop material provided with the accused GSP-500 is "fixably" positioned on the GSP-500. [ECF 52, p. 10.] However, as will be demonstrated at the

---

[2] PSG may argue that prior art pallets do not anticipate because they are not pedal boards. However, whether prior art is analogous is irrelevant to determination of anticipation. *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1068 (Fed. Cir. 2003). "[A] reference may be from an entirely different field of endeavor than that of the claimed invention or may be directed to an entirely different problem from the one addressed by the inventor, yet the reference will still anticipate if it explicitly or inherently discloses every limitation recited in the claims.'" *Id*., citing, *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997). In addition, pallets are not too large to use as pedal boards. Some pedal boards can be as large as a pallet. (*See* Exhibit E hereto.) Moreover, there is are no size limitations in the Asserted Claims.

Markman hearing, that hook and loop material can be easily peeled off a surface and is thus would be "releaseably," not "fixably", positioned on the GSP-500 if it is even used. Thus PSG's "ordinary meaning" construction for "fixably" apparently means the same as "releaseably" in violation of a presumed difference between the two words, *see Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (presumption that different meanings attach to different words), as well as inconsistent with the specification and normal definitions for these terms.

PSG also attempts to make much of the fact that Swift includes hook and loop material with its accused GSP-500 products. But that hook and loop material is not attached to the device [ECF 52-1, Belitz Depo., p. 78, l. 13 – p. 82, l. 15] as required by at least Asserted Claims 2, 3, 7, 8, 16, 17, 20 and 21. Therefore, Swift cannot directly infringe any of these Asserted Claims under 35 U.S.C. § 271(a). *See, e.g., Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311-12 (Fed. Cir. 2005) (to directly infringe apparatus claim accused device must meet all structural limitations); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) ("Direct infringement requires a party to perform or use each and every step or element of a claimed method or product."); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) (one who does not infringe independent claim cannot infringe claim dependent thereon). Swift is also not liable for direct infringement of the '023 Patent by end users who might apply that hook and loop material to the GSP-500 because Swift does not direct or control how anyone might use the GSP-500 and is not part of a joint enterprise with any end user. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (liability for acts of others under 35 U.S.C. § 271(a) requires accused infringer to either exercise direction or control over other's activities or be part of joint enterprise).

Finally, PSG's Response includes a "SUMMARY" raising new but irrelevant issues to

Swift's Opening Brief. Due to their inflammatory nature, Swift respectfully requests leeway to go one page over the five-page limit in order to address these newly-raised issues.

Because the GSP-500 has numerous substantial non-infringing uses, Swift cannot contribute to infringement of the '023 Patent pursuant to 35 U.S.C. § 271(c). *Vita-Mix Corp. v. Basic Holding Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (existence of any substantial non-infringing use for accused device defeats claim for contributory infringement as matter of law). For the same reason, Swift cannot induce infringement of the '023 Patent pursuant to 35 U.S.C. § 271(b). *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364-65 (Fed. Cir. 2003) ("[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven. . . . [W]here a product has substantial noninfringing uses, intent to induce infringement cannot be inferred even when the [alleged inducer] has actual knowledge that some users of its product may be infringing the patent."). The GSP-500 is specifically designed to be used as a microphone stand. [*See* Exhibit F hereto, Belitz Depo., p. 113, l. 11 – p. 115, l. 20.] Attached as Exhibit G is a photo of the GSP-500 in this configuration along with instructions for its use in this manner. The GSP-500 may also be used with pedals other than required guitar effect pedals. For example, when the GSP-500 is used as a microphone stand, it may be used with a vocal pedal. [ECF 52-1, Belitz Depo., p. 62, l. 17 – p. 63, l. 24; p. 77, l. 7 – p. 78, l. 12; Belitz Depo, Exhibit G, p. 113, l. 11 – p. 115, l. 20.] Pedals can also be mounted on the GSP-500 using methods other than the required hook and loop material. For example, pedals can be mounted to the GSP-500 using glue, bolts, or clamps [ECF 52-1, Belitz Depo., p. 77, l. 7 – p. 78, l. 12], or double-sided foam tape. The GSP-500 may also be used without passing cables through a "cable connection opening" as required by at least Asserted Claims 14-19 and 29-30. [*Id.*, p. 89, l. 12 – p. 90, l. 23.] When the GSP-500 is used in any of these ways, it is a substantial

non-infringing use to the '023 Patent.

Next, Swift has never withheld any information regarding the design of the GSP-500. PSG is fully aware of all design elements of the GSP-500 as that product has been publicly available for sale since before Swift filed its Complaint, and PSG has also been given a sample. Furthermore, the fact that the rails of the GSP-500 have internal components is irrelevant to infringement because none of those internal components are on the bottom side of the rail as required by the Asserted Claims.

Through affirmative defense and a claim for declaratory judgment, Swift seeks equitable intervening rights based upon its substantial development activities and investment for the GSP-500 occurring during reexamination of the '023 Patent. [*See, e.g.*, ECF 52-1, Belitz Depo., p. 57, l. 12 – p. 58, l. 7.] The Court has the discretion under 35 U.S.C. §§ 252 & 307(b) to allow Swift to: "(1) continue the manufacture, use, offer for sale, and sale of additional articles made before the reissue; and (2) continue to manufacture, use, offer to sell, or sell articles for which substantial preparations for manufacture or use was made before the grant of the reissue." *Shockley v. Arcan*, 248 F.3d 1349, 1361 (Fed. Cir. 2001). PSG's opinions about Swift's intervening rights claim are irrelevant to claim construction.

Dated: March 26, 2018                                Respectfully submitted,

                                                          s/ Benjamin B. Lieb
Benjamin B. Lieb
TALUS LAW GROUP LLC
2816 South Adams Street
Denver, Colorado 80210
(303) 246-4767
ben@taluslaw.com

ATTORNEYS FOR PLAINTIFF
SWIFT DISTRIBUTION LLC

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and exact copy of the foregoing document has been served upon all counsel of interest in this case vie electronic mail on this 26nd day of March, 2018.

                     s/ Benjamin B. Lieb